SEADALE v. MONTGOMERY et al.

(Supreme Court, Appellate Term. December 16, 1908.)

BANKS AND BANKING (§ 105*)—DEALINGS—REPRESENTATION OF BANK BY OF-
FICERS—VICE PRESIDENT—LIABILITY.

In an action against a bank for repairs to an automobile used by its vice president in attending to the bank's business, even if the president of the bank could not authorize such expenditures, the bank was liable for services rendered upon the automobile at the instance of the vice president after the adoption of a resolution by the board of directors authorizing him to employ all persons necessary to resume and conduct the business, which had been temporarily suspended.

[Ed. Note.—For other cases, see Banks and Banking, Cent. Dig. §§ 249, 251; Dec. Dig. § 105.*]

Appeal from Municipal Court, Borough of the Bronx, Second District.

Action by Axel H. Seadale against William R. Montgomery and the Hamilton Bank of New York City. From a judgment for plaintiff, the bank appealed. Affirmed.

Argued before GIEGERICH, HENDRICK, and FORD, JJ.

Gifford, Hobbs & Beard (John D. Fearhake, of counsel), for appellant.

Seymour Mork, for respondent.

PER CURIAM. This is an action brought by the plaintiff against the defendants to recover the sum of $78.39 for supplies furnished for an automobile owned by the defendant Montgomery, and for the storage thereof, between the 3d day of September, 1907, and the 2d day of January, 1908. In the month of September, 1907, supplies, with storage, aggregating $43.29, were furnished; in the month of October, 1907, up to the 23d day of October, 1907, $39.75. And for the balance of the month of October supplies were furnished in the amount of $12.80. In the month of November supplies were furnished to the amount of $50.75, and in the month of December, down to the 2d day of January, 1908, supplies to the amount of $32.80 were furnished. The defendant bank closed its doors on October 23, 1907. It will therefore be seen that the sum of $83.04 was furnished prior to the day of the bank's closing, and the sum of $96.35 thereafter. It is conceded that on the total of $179.39 the sum of $1 was paid on one occasion and $100 on another occasion, leaving a balance due of $78.39. The defendant Montgomery claims that these liabilities were incurred on behalf of the defendant bank, and that he personally is not responsible therefor. The plaintiff claims that Montgomery and the bank are jointly liable. The court held that the bank alone was liable, and gave judgment against the bank, after dismissing the complaint as to Montgomery. The bank appeals.

There is no doubt as to the merits of plaintiff's claim for the balance due, and the only question is as to which, if not both, of the defendants is liable therefor. In view of the finding of the court against the bank and in favor of Montgomery, we shall accept the latter's evidence as correct upon disputed issues of fact. The plaintiff testified that he had furnished supplies for Montgomery's car since June 7, 1907; that he rendered bills to him monthly, which were paid by Montgomery's personal check; that prior to September 1, 1907, he arranged with Montgomery's chauffeur to store the car, and furnished supplies under like arrangements; that on December 9, 1907, he received a payment on account of $100 from Mr. Montgomery, who delivered to him his personal check, and this was paid over at Mr. Montgomery's residence. He also showed the amount due from September 3, 1907, to January 2, 1908, as above set forth. The defendant Montgomery testified that on September 1, 1907, he was vice president of the Hamilton Bank, and was elected president on October 20, 1907, and that the bank was closed on October 23 or 24, 1907; that as vice president he employed and discharged men as he pleased, made loans at different branches, appraised property, examined men's statements, went around from branch to branch to see the work was properly done, and went all over the Bronx, looking after building loans and such things, in behalf of the bank; that in June, 1907, he had a conversation with E. R. Thomas, the president of the bank at that time, and O. F. Thomas, in which he told E. R. Thomas that it

was almost impossible for him to cover the territory which he had to cover in connection with his duties as vice president, and that he would buy and pay for an automobile, provided the bank would pay the running expenses, which Thomas agreed to do; that he and Thomas talked it over for several minutes, and he went over the duties which he had to perform and the territory he had to cover, and Thomas said: "You may do so." The witness then produced a letter written by E. R. Thomas April 3, 1908, which was received in evidence, and read as follows:

"My Dear Montgomery: You are entirely right in your letter to Mr. Grant, and can show him this letter of mine, to the effect that when I was president (of the bank) you were authorized to engage a chauffeur at the bank's expense, and that you were authorized by me as president to charge to the bank the incidental expense of running the machine."

Mr. Thomas had resigned as president on October 20, 1907, and had been succeeded by Montgomery. The minutes of the board of directors of the bank for October 26, 1907, was offered in evidence, and read as follows:

"The following resolution was moved, seconded and adopted: Whereas, owing to financial conditions this bank has been compelled to temporarily suspend payment for the protection of the depositors and stockholders; and whereas, in the judgment of the board of directors the bank is solvent, and its capital unimpaired, and in case of resumption under proper conditions in due course it will be able to meet and liquidate its obligations. * * * Resolved that * * * William R. Montgomery be and he is hereby authorized to take any and all steps, and employ such person or persons as he may find essential, in connection with the proposed resumption of said bank, as hereinbefore stated."

The witness further testified that during October, 1907, he "utilized the automobile stored at Mr. Seadale's [the plaintiff] in respect to the bank's business entirely," and continued to use it down to the 17th day of December, 1907; that it was used in the interest of the bank, either by him or some of the clerks, and was also used to take papers to and from Gifford, Hobbs & Beard's office; that he had had a conversation with plaintiff in December, 1907, when he paid the $100 on account, in which he told plaintiff that this bill was a bill of the bank; that plaintiff said he needed the money very much, and the witness said in consideration of that he would let plaintiff have $100 out of his own pocket, and that he told the plaintiff that every bill he had ever supplied was paid from the bank, and the witness also testified that as matter of fact payments were made by the bank to plaintiff. There was received in evidence a book of the bank entitled, "Sundry expenses from July first 1903, Tremont Branch," and an item therefrom was read as follows: "September 10th, A. H. Seadale, Sundries $31.36." There was received in evidence a charge expense slip of the bank as follows: "Paid to A. H. Seadale, bill of sundries amount $31.36"—together with a receipted bill of A. H. Seadale to W. R. Montgomery, dated September 1st, bill rendered $31.36, paid September 19, 1907, and check of the Hamilton Bank of New York City, Tremont Branch, to the order of Tremont Garage Station, $31.36, signed, "W. R. Montgomery, V. P.," and countersigned, "D.

R. Richards," indorsed "Tremont Garage Station, A. H. Seadale, Proprietor," and further indorsed, "The Tremont Branch of the Hamilton Bank." Montgomery was then asked as to what was the custom at the Hamilton Bank with reference to the payment of current or sundry expenses, and the witness answered that:

"No expenses ever came before the board with the exception of opening a branch. They generally put a limit on the expense of the furniture. No sundry expenses were ever brought before the board. The officers have absolute authority."

The witness further testified that the sundry expenses were always paid by the different branches by manager's check, and that for any expense, such as $300, $400, or $500 for advertising, he consulted nobody, and that such expenses were always confirmed by the committee of the board; that no such thing as a sundry expense bill ever came before the board during the seven or eight years that he was connected with the board; that once a month the expense book was sent down to the head office, in 125th street, and the officers went over it once a month; that the president generally ·went over it once a ·month to check up the managers, and that the committee of the board latterly once every three months, and formerly once every six months, used to go around from branch to branch and go over all incidental expenses and made an examination of everything in the bank, and that this was done monthly with every branch. On cross-examination the witness testified that he had received bills made out to him from the plaintiff from time to time, ever since he had been doing business with him; that the bank paid the bills, either in cash or by manager's check, but he would not say that the bank in every instance paid these bills. The said defendant Montgomery was corroborated in many material points by other witnesses connected with the bank, and even by witnesses called on behalf of the bank. The appellant bank urges that the president was without authority to authorize these expenditures without permission of the board of directors. It may be observed, however, that Montgomery had already paid more than enough on account to cover plaintiff's claim up to the time—i. e., October 26, 1907—when the above quoted resolution of the board of directors was passed. Up to October 26th, prior to the resolution above quoted, plaintiff's claim was $92.04, whereas Montgomery's payment was $100, and $1 had been paid at another time. In October, subsequent to the 26th, the sum of $3.80 accrued on plaintiff's claim, according to his bill of particulars. In November $50.75 more accrued, and in December up to January 2, 1908, $32.80 more accrued. Thus $87.35 of the claim accrued subsequent to the resolution of October 26, 1907, by which the extended discretionary powers above set forth were conferred upon Montgomery by the board of directors. The judgment is for $81.09, damages and interest, and $14.72 costs. Even assuming, therefore, as correct the bank's contention that its president was without authority to authorize the expenditure in question, and that the bank did not ratify such assumption of authority, still the bank appears to be liable for the amount awarded in the . judgment, for, crediting the balance of $8.96, being excess of Montgomery's payment of $100 over

the $91.04 due previous to the resolution on the $87.35 due subsequent to the resolution, we have the sum of $78.39, the exact amount of plaintiff's claim. While errors were committed upon the trial, we find none of them of so prejudicial a nature as to call for a reversal.

Judgment affirmed, with costs.